William L. WELP, Executor of the Estate of Neil T. Chadderdon, Deceased, Appellee,

v.

IOWA DEPARTMENT OF REVENUE, Appellant.

No. 68654.

Supreme Court of Iowa.

April 20, 1983.

Thomas J. Miller, Atty. Gen., Harry M. Griger, Sp. Asst. Atty. Gen., and Mark R. Schuling, Asst. Atty. Gen., for appellant.

James R. Moore of Welp, Harrison, Brennecke & Moore, Marshalltown, for appellee.

Considered by REYNOLDSON, C.J., and HARRIS, McCORMICK, LARSON, and SCHULTZ, JJ.

SCHULTZ, Justice.

The Iowa Department of Revenue (Department) claims that Iowa Code section 450.39 is a statute of limitations that is applicable to both the Department and the personal representative of an estate. The Department contends that this section prevents the representative from amending a preliminary inheritance tax report and probate inventory to reflect the true value of a reported asset if sixty days have passed since the filing of such inventory, unless the Department requires an appraisal of the reported assets. In reviewing the decision of a hearing officer, the director of revenue adopted the Department's view; on judicial review, however, the district court disagreed with the Department's contention. We affirm the decision of the district court.

The basic facts are not disputed. Neil T. Chadderdon died testate on September 26, 1979. His will was admitted to probate and William L. Welp was appointed executor of the estate. Welp filed a preliminary inheritance tax report and probate inventory on November 20, 1979. Under the category of assets, the inventory listed a promissory note that was payable in installments over a ten year period and bore 6.5% simple annual interest. On the date of death the unpaid principal was $517,469 and the unpaid interest was $2,211.64. The inventory listed the value of the note at $519,670.64.

The executor subsequently received a letter dated May 15, 1980, from the president of the Fidelity Brenton Bank and Trust Co. of Marshalltown, Iowa, that stated as follows:

According to our calculations, the principal note in the Neil Chadderdon Estate

which is drawing 6.5% interest would be discounted to 54.16% of its value in order to yield the 12% rate. You will recall from my letter of May 12, 1980, that the good Commercial/Agricultural loans on September 26, 1970, were yielding 12% to us here at the bank. In other words, the principal balance of $517,466.00 would need to be discounted to $280,273.00 in value on 9/26/79.

Welp filed an amendment to the inventory on May 21, 1980, that withdrew the note's previous valuation and substituted the amount of $280,273.00. In the amendment Welp stated that due to economic conditions and prevailing interest rates the unpaid balance on the note did not represent its fair market value.

On September 12 Welp filed the final inheritance tax return listing the amended value of the note. On October 1 the Department notified Welp that the amendment filed on May 21 was not accepted because section 450.39 "provides for finality of value sixty days after the inventory is filed unless an appraisal is requested." On October 24 the Department assessed the estate additional inheritance tax of $18,-668.32. This appeal is an outgrowth of a protest filed by Welp to this assessment.

The dispute in this case centers on the interpretation of section 450.39, which provides as follows:

1. An appraisal is not required for an item of property in an estate if the item is listed on an inventory or report filed in the estate or an amendment thereto, unless the department of revenue requests appraisal by filing a written request with the clerk where the inventory or report is filed, within sixty days after the filing. When a request is filed, the clerk shall notify the personal representative and his attorney of the request. The department of revenue may waive an appraisal which has been previously requested.

2. If appraisal of an item of property is not required or is waived, the personal representative, trustee, or the persons entitled to or claiming the item of property shall be charged, for the purpose of computing the tax, with the full value of the item as reported in the inventory or report.

The Department interprets this section to mandate that the listed value of an inventory item is fixed finally for inheritance tax purposes once sixty days have passed after its filing, unless the Department requests an appraisal. The district court disagreed with this interpretation, however, and concluded that the statute provides no limitation on amendments to the inventory and only requires the Department to request an appraisal "within sixty days after the filing." It further concluded "the filing refers to not only the 'inventory or report' but also to an amendment thereto."

While we give deference to the Department's interpretation of a tax statute, "the meaning of a statute is always a matter of law, and final construction and interpretation of Iowa statutory law is for this court." *Sorg v. Iowa Department of Revenue,* 269 N.W.2d 129, 131 (Iowa 1978). Some familiar principles that we have adopted in order to aid our interpretation and construction of tax statutes are:

(1) In considering legislative enactments we should avoid strained, impractical or absurd results.

(2) Ordinarily, the usual and ordinary meaning is to be given the language used but the manifest intent of the legislature will prevail over the literal import of the words used.

(3) Where language is clear and plain, there is no room for construction.

(4) We should look to the object to be accomplished and the evils and mischiefs sought to be remedied in reaching a reasonable or liberal construction which will best effect its purpose rather than one which will defeat it.

(5) All parts of the enactment should be considered together and undue importance should not be given to any single or isolated portion.

(6) We give weight to the administrative interpretation of statutes, particularly when they are of longstanding.

(7) In construing tax statutes doubt should be resolved in favor of the taxpayer.

*Iowa National Industrial Loan Co. v. Iowa State Department of Revenue,* 224 N.W.2d 437, 440 (Iowa 1974) (citations omitted). All rules of statutory construction that shed light on legislative intent should be utilized and none of these rules is to be used to the exclusion of the others. *American Home Products Corp. v. Iowa State Board of Tax Review,* 302 N.W.2d 140, 143 (Iowa 1981).

An additional rule of construction is applicable to this case. The determinations of the actual value of the taxable assets are adversary proceedings that afford rights of notice, objection, hearing, and appeal. *See* Iowa Code §§ 450.15, .28, .29, .31, .32, and .33 (1981). Although section 450.39 is an alternative to the appraisement, it is a part of the procedures that impose liens on property and result in judgments. *See* §§ 450.7, .55. Consequently, since the Department is claiming that section 450.39 is a statute of limitations and since the appraisement of property for inheritance tax has an adversary mien, we believe that we should apply the rules appropriate for interpreting and construing a statute of limitations.

Courts do not favor statutes of limitations. When two interpretations of a limitations statute are possible, the interpretation which allows the litigant seeking relief a longer period is to be preferred. *Orr v. Lewis Central School District,* 298 N.W.2d 256, 261 (Iowa 1980). It is also a settled principle that a statute of limitations should not be extended or applied to cases not clearly within the provisions of the statute. *Sprung v. Rasmussen,* 180 N.W.2d 430, 433 (Iowa 1970).

With all of these general guidelines in mind, we now look to section 450.39 to determine whether the legislature intended to establish a time limitation upon the personal representative's authority to amend the valuation of a listed asset. In our examination we shall discuss each party's contentions.

The Department now argues that statutory construction is improper as there is no ambiguity or obscurity in the statute. This argument is inconsistent with the position the Department presented to both the agency and the district court. In its briefs before these tribunals the Department argued that the hearing officer should apply the relevant rules of statutory construction. Moreover, the plain language of the statute does not state that after sixty days passes the executor is bound by the values listed in the inventory. The statute does allow amendment of the inventory and it is not clear whether the request for appraisement "within sixty days after the filing" is limited to the filing of the inventory or if it also refers to the filing of an amendment to an inventory. Because of this ambiguity we must search beyond the plain words of the statute to find the correct interpretation.

The Department also argues that the legislature intended for this section to be a statute of limitations. This argument is not consistent with the explanation attached to the senate bill which was later enacted and codified as section 450.39. S.F. 500, 64th G.A., 2d Sess. § 6 (Iowa 1971); 1971 Iowa Acts ch. 218 § 6. The explanation stated that the senate bill "provides that inheritance tax appraisals are not necessary unless the department of revenue requests them, and shifts responsibility relating to appraisals and releases of liens from the district court judges." S.F. 500. Prior to the enactment of this section virtually all estate assets were appraised. Only if the assets were liquid and had an undisputed face value, or if the court found that the estate was not subject to inheritance tax were the assets not appraised. Iowa Code §§ 450.39, .40 (1966). We thus conclude that the primary legislative purpose in enacting this section was to reduce both cost and court time. This conclusion does not necessarily dismiss the Department's argument that there is an unstated secondary purpose which supports its contentions.

The Department also suggests that the legislature intended to provide statutory finality to the appraisement process so as to

allow the implementation of the primary purpose of chapter 450, to wit, the assessment and collection of the inheritance tax. It is certainly true that the collection of a tax is the dominant purpose of chapter 450. It is also clear, however, that the legislature intended to impose this tax on the "net market value" of property passing as a result of decedent's death. Iowa Code § 450.-3; see Iowa Code §§ 450.32, .37. An inference that section 450.39 restricts the personal representative in amending a return to reflect the true market value of an asset would be contrary to the general plan of the chapter for valuation of assets. If the legislature intended to provide finality by enacting a limitation of action on the personal representative's power to amend the valuation, it should have clearly and distinctly so provided. We shall not provide this limitation in the absence of clear legislative direction. *Orr*, 298 N.W.2d at 261. Our conclusion is strengthened by the rule that we resolve doubt in favor of the taxpayer. *Iowa State Department of Revenue*, 224 N.W.2d at 440.

We also find no merit in the Department's claim that its construction of the statute is reasonable and that the allowance of amendments would result in an unworkable statute that would produce absurd results. It argues that if we do not accept its interpretation of the statute the personal representative would be able to file amendments indefinitely and thus disrupt the tax collection system. This argument presumes that the legislature values administrative efficiency more than accurate and fair collection of taxes. In the case at hand, the Department's interpretation would penalize the taxpayer by more than $19,000 if the representative is not allowed to amend an erroneous inventory valuation. This results in a system of tax collection that is both inaccurate and unfair to the taxpayer. We do not perceive in this chapter a legislative intent to place a harsh restriction on a taxpayer's right to amend an incorrect valuation in order to secure accurate tax assessment. It is true that ease of collection with a minimum of cost could be a legislative goal. We believe, however, that in view of section 450.94(3) which allows refunds "within five years after the tax payment upon which a refund or credit is claimed became due, or one year after the tax payment was made, whichever time is the later," efficiency of collection was not the legislature's primary purpose.

Section 450.6 provides that the tax is to be paid within twelve months of decedent's death and section 450.63 (1981) provides penalties for payments made thereafter. These sections provide some finality in the tax system and we believe that personal representatives and their counsel would find endless amendments to be both time consuming and costly to prepare. We find it difficult to believe that many would abuse this privilege.

We hold that section 450.39 does not prevent a personal representative from amending an inventory to reflect the true market value of an asset that had been incorrectly valued. Any other construction of the section would be inconsistent with the legislative intent to tax property at its market value. We hold that the language of this section does not indicate a clear intent to establish a sixty day time limitation upon amending the inventory. Although we give some weight to the agency's interpretation of the statute, we are the ultimate arbiters of the statute's meaning and, after considering other standards of interpretation, we disagree with the agency's interpretation. We hold that the district court ruled correctly.

AFFIRMED.